UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 19-CV-81111-Rosenberg/Reinhart

JOSE RIVERA,

                Plaintiff,

v.

PALM BEACH COUNTY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 66 and 67)

Before the Court is Defendant Palm Beach County's Motion for Summary Judgment (ECF No. 67), Plaintiff Jose Rivera's Motion for Summary Judgment (ECF No. 66), and Plaintiff's Motion in Limine (ECF No. 81), which were referred to me by the Honorable Robin L. Rosenberg. ECF Nos. 75 and 85. I have reviewed Defendant's Motion for Summary Judgment (ECF No. 67), Defendant's Statement of Undisputed Material Facts in Support of Motion for Final Summary Judgment (hereinafter "DSOF") (ECF No. 68), Plaintiff's Response (ECF No. 76), Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (hereinafter "PRSOF") (ECF No. 77), Defendant's Reply (ECF No. 78), Plaintiff's Motion for Summary Judgment (ECF No. 66), Plaintiff's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (hereinafter "PSOF") (ECF No. 65), Defendant's Response (ECF No. 72-1), Defendant's Response to Plaintiff's Statement of

Undisputed Material Facts (hereinafter "DRSOF") (ECF No. 72), Plaintiff's Second Motion in Limine (ECF No. 81), and Defendant's Response to Plaintiff's Motion in Limine (ECF No. 83).. I held an oral argument on the motions on January 14, 2021. ECF No. 86. This matter is now ripe for decision. For the reasons discussed below, I **RECOMMEND** that the Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary Judgment be **DENIED**.

## I.    BACKGROUND

For approximately nineteen years, Plaintiff Jose Rivera ("Mr. Rivera") was employed as a bus operator by Palm Tran Inc. ("Palm Tran"), in Palm Beach County, Florida. He was fired after he had an altercation with a bus patron on March 7, 2017. He filed a grievance and participated in an arbitration hearing, after which the Arbitrator denied the grievance. In his Second Amended Complaint (ECF No. 21), Mr. Rivera alleges that he was subjected to discrimination in violation of Title VII, the Florida Civil Rights Act ("FCRA") and 42 U.S.C. § 1981, because he is a Hispanic male of Puerto Rican descent. Palm Tran now moves for summary judgment on all counts of the Second Amended Complaint. ECF No. 67. Mr. Rivera also moves for summary judgment in his favor on all counts. ECF No. 66.

## II.    APPLICABLE LAW

1. <u>Summary Judgment</u>

The legal standard on cross-motions for summary judgment does not differ from the standard applied when only one party files a summary judgment motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The

standard is well-settled that summary judgment is authorized only when the moving party establishes that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). When evaluating a summary judgment motion, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *See Adickes*, 398 U.S. at 157.

The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must initially "present[] evidence which, if uncontradicted, would entitle it to a directed verdict at trial." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted). Then, "Federal Rule of Civil Procedure 56(e) shifts to the non-moving party the burden of presenting specific facts showing that such contradiction is possible." *Id.*

The method by which the moving party can meet its initial burden depends on whether the movant or the non-movant would bear the burden of proof at trial on the underlying legal issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, 'that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *United States v. Four Parcels of Real Prop.*

*in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). In contrast, where, the movant does not bear the burden of proof at trial, it "'is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.'" *Nunez v. Coloplast Corp.*, No. 19-CV-24000, 2020 WL 2561364, at *1 (S.D. Fla. May 20, 2020) (J. Singhal) (citations omitted). Instead, it merely must point out "an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels*, 941 F.2d at 1437–38.

If the moving party meets its initial burden, the non-moving party "may not rest upon the mere allegations or denials in its pleadings." *Walker*, 911 F.2d at 1576. Rather, it must "make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Those Certain Underwriters at Lloyd's Subscribing to Policy No. 25693 JB v. Capri of Palm Beach, Inc.*, 932 F. Supp. 1444, 1446 (S.D. Fla. 1996) (citing *Celotex Corp.*, 477 U.S. at 2550 (1986)) (J. Moreno), aff'd sub nom. *Certain Underwriters v. Capri*, 128 F.3d 732 (11th Cir. 1997).

An issue is genuine if "a reasonable trier of fact could return judgment for the nonmoving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d

1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247–48). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. A self-serving and uncorroborated affidavit can create a genuine dispute of material fact. *United States v. Stein*, 881 F.3d 853, 858 (11th Cir. 2018); but "[c]onclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018).

"If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

In sum, looking to Palm Tran's Motion for Summary Judgment specifically, Palm Tran must first offer facts, viewed in the light most favorable to Mr. Rivera, (or note the absence of facts) sufficient to show that Palm Tran would be entitled to judgment as a matter of law. If Palm Tran does so successfully, Mr. Rivera bears the burden of producing additional undisputed evidence that shows either (1) Palm Tran is not entitled to judgment at this stage or (2) there is a disputed issue of material fact.

Federal Rule of Civil Procedure 56 and Local Rule 56.1 set forth the procedures for pleading (and responding to) a Motion for Summary Judgment. Rule 56(c) states:

> **(1) Supporting Factual Positions.** A party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.

Fed. R. Civ. P. 56(c). Our Local Rule requires even greater specificity. Each asserted or disputed fact must be "supported by specific, pinpoint references" to particular parts of the record. S.D. Fla. L.R. 56.1(b)(1)(B), (b)(2)(A). "The pinpoint citations shall reference pages and line numbers, if appropriate, of exhibits, designate the number and title of each exhibit, and provide the ECF number of all previously filed materials used to support the Statement of Material Facts. When a material fact requires specific evidentiary support, a general citation to an exhibit without a page number or pincite (e.g., 'Smith Affidavit' or 'Jones Deposition' or 'Exhibit A') is non-compliant." S.D. Fla. L.R. 56(b)(1)(B). The Court has discretion to disregard a factual assertion or dispute that is not properly supported by admissible evidence. Fed. R. Civ. P. 56(e); S.D. Fla. L.R. 56.1(c), (d). A factual assertion that is not properly disputed may be

deemed admitted "provided that: (i) the Court finds that the material fact is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply." S.D. Fla. L.R. 56.1(c).

2. <u>Title VII, FCRA, and 42 U.S.C. § 1981: Discrimination Based on Race, National Origin, or Gender</u>

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .." 42 U.S.C. § 2000e-2. In order to survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a reasonable jury to conclude that (1) plaintiff suffered an adverse employment action and (2) race, national origin, or gender was a motivating factor for that action. *See* 11th Circuit Pattern Civil Jury Instruction §4.9.

One way a plaintiff may show discriminatory intent is by satisfying the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that he belongs to a protected class, (2) that he was subjected to an adverse employment action, (3) that he was qualified to perform the job in question, and (4) that his employer treated "similarly situated" employees outside his class more favorably. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997) (citing *McDonnell Douglas,* 411 U.S. at 802). These "similarly situated" employees, known as comparators, must be "similarly situated in all material respects." *Lewis v.*

*City of Union City, Ga.*, 918 F.3d 1213, 1226 (2019). This analysis turns "not on formal labels, but rather on substantive likeness." *Id*. at 1228. Relevant factors include, but are not limited to, whether the individual (1) engaged in the same basic conduct as the plaintiff; (2) was subject to the same employment policy, guideline, or rule as the plaintiff; (3) was under the jurisdiction of the same supervisor as the plaintiff; and (4) shared the plaintiff's employment or disciplinary history. *Id*. at 1227–28.

If the plaintiff succeeds in establishing a prima facie case of race discrimination under Title VII, "a [rebuttable] presumption of discrimination is created." *Adams v. Cobb Cty. Sch. Dist.*, 242 F. App'x 616, 619 (11th Cir. 2007) (citing *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007)). The defendant may then rebut the presumption by "articulating a legitimate, non-discriminatory reason for the adverse action." *Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 F. App'x 680, 686–87 (11th Cir. 2019) (citing *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)). If the defendant carries this burden, the burden then shifts back to the plaintiff, who then "must demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Kocsis*, 788 F. App'x at 687 (citing *Bryant*, 575 F.3d at 1308). "If the plaintiff does that, [he] can avoid judgment as a matter of law against [him]." *Tomczyk v. Jocks & Jills Restaurants, LLC.*, 198 F. App'x 804, 810 (11th Cir. 2006)(citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997)).

Alternatively, a plaintiff can also overcome summary judgment in a Title VII action if he presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis v. City of Union City, Ga.*, 934 F.3d

169, 1185 (11th Cir. 2019) ("*Lewis II*") (quotations omitted) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11ᵗʰ Cir. 2011)). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis II*, 934 F.3d at 1185 (alteration omitted) (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011)).

The discriminatory intent question focuses on the person making the termination decision. "'Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.' When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker." *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) (citations omitted). "Normally, then, we look only to the conduct of the decisionmaker—the party with the 'power to actually discharge the employee.'" *Lewis II*, 934 F.3d at 1196 (J. Tjoflat, dissenting in part) (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999) (per curiam)).

In some circumstances, discriminatory animus can be imputed to a decisionmaker under "cat's paw" agency principles. "The cat's paw theory provides that discriminatory animus may be imputed to a neutral decision-maker if a supervisor recommends an adverse employment action due to a discriminatory animus and that recommendation is a motivating factor of the decision-maker's

ultimate adverse employment action . . . These principles apply when a recommending supervisor's discriminatory animus was a but-for cause of, 'or determinative influence on,' the decision-maker's ultimate decision. *Quintero v. Publix Super Markets, Inc.*, 18-CV-21615, 2020 WL 607117, at *23 (S.D. Fla. Feb. 7, 2020) (J. Gayles). In the case at hand, the parties do not appear to allege any scenarios in which a supervisor discriminatorily recommended adverse employment actions to neutral decision-makers, so the cat's paw theory is not applicable.

The FCRA offers protection to employees in the workplace from discrimination and provides in relevant part that, "[i]t is an unlawful employment practice for an employer to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." § 760.10(1)(a), Fla. Stat. (2004). The same legal analysis to Title VII and the FCRA. *See Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) ("The [FCRA] was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII."). Specifically, Florida courts apply the same burden-shifting framework set out in *McDonnell Douglas.* 411 U.S. at 802–04. *See e.g., Valenzuela v. GlobeGround N. Am., LLC*, 18 So. 3d 17, 21–22 (Fla. 3d DCA 2009); *Scholz v. RDV Sports, Inc.*, 710 So. 2d 618, 624 (Fla. 5th DCA 1998).

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens,' which in an

employment context means protection against discrimination based on race and color." 42 U.S.C. § 1981(a). *Mosley v. Ala. Unified Judicial Sys., Admin. Office of Courts*, 562 F. App'x 862, 868 (11th Cir. 2014). "The elements of a section 1981 claim in the employment context are the same as the elements of a Title VII claim." *Harrison v. Belk, Inc.*, 748 Fed. App'x 936, 941 (11th Cir. 2018) (citation omitted). However, in bringing a section 1981 claim, the plaintiff bears the burden of showing that race was a *but-for* cause of the injury, not merely a motivating factor. *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Like in Title VII and FCRA claims, Plaintiff can circumstantially prove discriminatory intent with "either a similarly situated comparator who was not treated similarly under similar circumstances, or a 'convincing mosaic' of circumstantial evidence suggesting he was terminated for discriminatory reasons." *See Perry v. Schumacher Group of Louisiana*, No: 2:13-cv-36-FtM-29DNF, 2020 WL 3971937 at *7 (quoting *Biggers v. Koch Foods of Ala.*, LLC, 2020 WL 2312033 at *5 (M.D. Ala. May 8, 2020)).

## III.   PARTIES' LEGAL ARGUMENTS

In its Motion for Summary Judgment, Palm Tran argues that summary judgment should be granted as to all of Mr. Rivera's claims for two reasons. ECF No. 67 at 1. First, Mr. Rivera cannot establish a prima facie case of discrimination based on race, national origin, or gender because he has not identified similarly situated comparators. Second, even if he could make a prima facie showing, he cannot rebut Palm Tran's proffered legitimate non-discriminatory reason for firing him —- that is,

he engaged in a verbal argument with a passenger in front of other passengers, during which he left his post on the bus and threatened to physically fight the passenger.

Mr. Rivera counters that summary judgment in Palm Tran's favor is not appropriate because, in accordance with *McDonnell Douglas*, he has successfully identified many comparators who are not members of Mr. Rivera's protected class, engaged in the same or similar conduct as Mr. Rivera, but were not terminated. ECF No. 76 at 25. Further, Mr. Rivera contends that the reason given by Palm Tran is a pretextual reason. ECF No. 76 at 9.

## IV.   SCOPE OF EVIDENCE TO BE CONSIDERED

Before listing the undisputed material facts, I explain whether certain evidence is properly considered at this stage of the proceedings. Specifically, in his Response to Defendant's Statement of Undisputed Material Facts, Mr. Rivera frequently objects to the evidence cited by Palm Tran on the basis that it is hearsay and/or violates the Best Evidence Rule. I will address each of these objections, as well as Mr. Rivera's Second Motion in Limine (ECF No. 81) in turn.

1. <u>March 7, 2017 Incident Video</u>

In support of its summary judgment motion, Palm Tran filed a video of the March 7, 2017, incident involving Mr. Rivera and the bus patron. ECF No. 68-13. Mr. Rivera objects to the Court considering this video on the grounds that it is a "Best Evidence Rule Violation in that both Palm Tran and Rivera have video footage of the incident for a comparison of Defendant's assertions. As such, the video should be

reviewed by the court as a matter of fact prior to summary judgment finding in favor of Rivera." PRSOF ¶ 2.

Federal Rule of Evidence 1002 outlines the "Best Evidence Rule" and provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002.[1] The Best Evidence Rule applies to summary judgment motions because although evidence does not have to be in admissible form to be considered at the summary judgment stage, "[o]n motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).

Palm Trans' exhibit conforms to the Best Evidence Rule because it contains the content of the matter it purports to depict. Mr. Rivera did not submit his own video "for comparison to Defendant's assertions" nor did he file a motion asking permission from the Court to do so. Thus, the Court will look to the video submitted by Palm Tran at ECF No. 68-13 to deduce the material facts related to the incident on March 7, 2017. To the extent Mr. Rivera is objecting to the Court relying on Palm Tran's characterization of the video in its statement of facts, the Court will look only to the video itself to determine what occurred during the incident on March 7, 2017, and not Palm Tran's representations about what the video depicts.

---

[1] For purposes of this rule, an original includes a duplicate copy. Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.").

2. <u>Mr. Rivera's Motion in Limine</u>

On November 4, 2020, after the pretrial motions deadline had passed and after all pleadings had been filed related to summary judgment, Mr. Rivera filed a Motion in Limine ("Second Motion in Limine") asking the Court to review the video footage from three separate incidents that he alleges depict three of his proffered comparators – Mr. Contino, Mr. Guanche, and Mr. White – engaged in respective altercations with members of the public. ECF No. 81 at ¶ 1.[2]

As an initial matter, a proper motion in limine is an evidentiary motion that seeks a determination as to whether to exclude (or admit) evidence before it is offered at trial. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."). Therefore, to the extent that Mr. Rivera argues that these three videos should be admissible at trial, I need not address that issue until the District Court decides whether to adopt my Recommendation that Palm Tran's Motion for Summary Judgment be granted.

At the oral argument on the summary judgment motion, Mr. Rivera's counsel stated that in filing this Motion in Limine, he was also seeking to admit the videos as evidence to be considered for summary judgment purposes. ECF No. 86 at 1:00:01– 1:00:40. With that in mind, I have considered Mr. Rivera's Second Motion in Limine as a Motion to Supplement the Record and find that it should be denied as untimely.

---

[2] The pretrial motions deadline was September 28, 2020. *See* ECF No. 63.

Federal Rule of Civil Procedure Rule 56 states that for purposes of summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials *in the record*. Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). As the advisory committee notes to the 2010 amendments state, "[m]aterials that are not yet in the record ... must be placed in the record." Correspondingly, the Court's review is limited to "materials in the record." Fed. R. Civ. P. 56(c)(3).

Additionally, Rule 6(b)(1)(B) provides that for any act that must be done by a party to a federal court proceeding within a specified time frame, the court may "for good cause, extend the time...after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Mr. Rivera filed his first Motion in Limine on October 23, 2020, almost a month after the motions deadline and over a month after filing his motion for summary judgment. *See* ECF Nos. 63, 66, 79. The District Court denied the motion without prejudice for failure to comply with the pretrial motions deadline and failure to include a certification of conferral as required by Local Rule 7.1. *See* ECF No. 80. The District Court then provided Mr. Rivera an opportunity to file a motion for leave to file a motion in limine, which Palm Tran could then oppose. *Id.*

Instead, on November 4, 2020, Mr. Rivera filed the exact same motion in limine as he did on October 23, but added the "certification of good faith attempt to meet and confer" paragraph at the end. *Compare* ECF No. 79 *with* ECF No. 81. Mr. Rivera failed to heed the District Court's Order and file a motion for leave to file his second

motion in limine. Furthermore, the filed motion did not address his neglect, whether excusable or not, and did not provide the Court with good cause to extend the pretrial motions deadline and allow new evidence to be submitted for summary judgment consideration well after the issues had been fully briefed. Thus, I find that Mr. Rivera's Second Motion in Limine, treated as a request to supplement the summary judgment record, should be denied.

     3.   <u>Incident Reports Regarding Mr. Contino (ECF Nos. 68-14 and 68-21)</u>

     In support of its Motion for Summary Judgment, Palm Tran relies on the two internal reports to establish the facts surrounding an incident with one of Rivera's proffered comparators, Mr. Contino. *See* DSOF ¶ 11. The two internal reports submitted by Palm Tran are Mr. Contino's incident report (ECF No. 68-14) and the Supervisor Incident Report (ECF No. 68-21). Mr. Rivera objects to these reports on two grounds: first, that they are violations of the Best Evidence Rule and second, that they constitute inadmissible hearsay. PRSOF ¶ 11. That objection is sustained in part and overruled in part.

     Speaking first to Mr. Contino's self-authored report, I do not find that it violates the Best Evidence Rule. Again, the "Best Evidence Rule" provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. "Except as provided in Rule 1002, 'there is no general rule that proof of a fact will be excluded unless its proponent furnishes the best evidence in his power.' *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994) (quoting 5 J. Weinstein & M.

Berger, Weinstein's Evidence ¶ 1002[01], at 1002–3 (1993)). Rule 1002 requires production of an original writing, recording, or photograph only when the proponent of the evidence seeks to prove the content of the writing, recording, or photograph. *See United States v. Howard*, 953 F.2d 610, 612 & n. 1 (11th Cir.1992); *United States v. Tombrello*, 666 F.2d 485, 491 (11th Cir.), cert. denied, 456 U.S. 994 (1982). It does not, however, "require production of a document [or recording] simply because the document [or recording] contains facts that are also testified to by a witness." *United States v. Finkielstain*, 718 F. Supp. 1187, 1192 (S.D.N.Y. 1989). Thus, the rule is inapplicable when a witness merely identifies a photograph or videotape "as a correct representation of events which he saw or of a scene with which he is familiar." Fed. R. Evid. 1002 Advisory Committee's note; *see also United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir.1996) ("[A] tape recording cannot be said to be the best evidence of a conversation when a party seeks to call a participant in or observer of the conversation to testify to it. In that instance, the best evidence rule has no application at all.").

Mr. Contino's report is a personal account describing his experience with a passenger as a participant in the incident. It does not attempt to describe what a video of the incident does or does not show. In keeping with the reasoning in *Workinger*, a video cannot be said to be the best evidence of an incident when a party has an admissible description from someone who participated in the incident. 90 F.3d at 1415. Thus, I do not find that the Best Evidence Rule applies to Mr. Contino's report.

Mr. Rivera also argues that Mr. Contino's report is hearsay. PRSOF ¶ 11. The report authored by Mr. Contino qualifies under the "Records of a Regularly Conducted Activity" exception to hearsay, otherwise known as the business record exception. Fed. R. Evid. 803(6). Rule 803(6) of the Federal Rules of Evidence excepts the following from the rule against hearsay:

> A record of an act, event condition, opinion, or diagnosis if: (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The touchstone of admissibility under the business records exception to the hearsay rule is reliability." *United States v. Bueno-sierra*, 99 F.3d 375, 378 (11th Cir. 1996). "For [the business records] exception to be available, all persons involved in the process must be acting in the regular course of business— otherwise, an essential link in the trustworthiness chain is missing." *T. Harris Young & Associates, Inc. v. Marquette Electronics, Inc.*, 931 F.2d 816, 828 (11th Cir. 1991) (citing Fed. R. Evid. 803, notes of advisory committee on 1972 proposed rules); *see also United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1999) ("[The business records] exception applies only if the person furnishing the information to be recorded is acting routinely, under a duty of accuracy, with employer reliance on the result, or in short in the regular course of business.") (internal quotations omitted).

Mr. Contino authored the report in accordance with company policy. Section 3.20 of the Bus Operators Handbook states the following: "Whenever any type of vehicle accident or, customer accident or incident occurs in or around a bus, the Communicator/Operations Supervisor must be notified immediately and a written report must be filed by the Operator within twenty-four (24) hours from the time of the accident/incident." ECF No. 68-10 at 13. Section 7.06 of the Bus Operators Handbook also states that after an altercation or disturbance, "All pertinent information must be reported immediately to the Operations Supervisor. Also an Accident/ Incident Report shall be completed and submitted within twenty-four (24) hours to the Safety and Training Department." *Id*. at 28. Mr. Contino filled out this report entitled "Palm Tran Accident/ Incident Report" on the day of the incident (May 9, 2017) in accordance with the company's bus operator policies. ECF No. 68-14. Furthermore, Mr. Rivera did not present any evidence that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. For these reasons, I find that this report would properly be admissible at trial under the business record exception to hearsay, thus it will be considered for purposes of this motion for summary judgment.

Regarding the Supervisor's report, I decline to address whether it violates the Best Evidence Rule because I find it is inadmissible hearsay. The report is certainly an out of court statement offered for the truth of the matter asserted. In fact, it is an out of court statement summarizing a statement from someone else, making it hearsay within hearsay. Such a report (or even testimony from the supervisor

him/herself) could not be presented in an admissible form at trial even by having the author of the report testify. Thus, it cannot be considered on summary judgment. *Jessup v. Miami-Dade Cnty, et al.*, 697 F. Supp. 2d 1312, 1322 (S.D. Fla. 2010) (J. Seitz) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322–25 (11th Cir. 1999)). [3]

4. <u>Arbitration Report and Arbitration Hearing Transcript</u>

In support of its Motion for Summary Judgment, Palm Tran relies on the transcript from the arbitration proceeding, as well as the Arbitrator's report, to establish the facts surrounding an incident with one of Rivera's proffered comparators, Ms. Collins. *See* DSOF ¶ 14. Mr. Rivera objects on hearsay grounds to Palm Tran's reliance on the arbitration report. PRSOF ¶ 14. [4] I agree and find that the report is inadmissible hearsay and thus cannot be relied upon to establish undisputed material facts. The arbitration report contains summaries of out of court

---

[3] The supervisor's report does not qualify under the business record exception to the rule against hearsay for two primary reasons: (1) there is no indication on the report about when it was authored so the Court cannot determine whether it was made "at or near the time" of the incident itself, and (2) Palm Tran did not present evidence of the supervisors' policy manual to establish that such reports are made "in the course of a regularly conducted activity." Fed. R. Evid. 803(6).

[4] Mr. Rivera did not raise a hearsay objection to the arbitration hearing transcript. In the absence of a timely objection or motion to strike, defects in summary judgment evidence are deemed waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."); *see also Auto Drive–Away Co. of Hialeah v. Interstate Commerce Comm'n*, 360 F.2d 446, 448–49 (5th Cir.1966) (in the absence of a timely objection or motion to strike, defects in summary judgment evidence ordinarily are waived); *United States, for Use and Benefit of Austin v. Western Elec. Co.*, 337 F.2d 568 (9th Cir. 1964); *Klingman v. Nat'l Indem. Co.*, 317 F.2d 850 (7th Cir. 1963).

statements and is being offered to prove the truth of the matter asserted (i.e. what happened during the incident involving Ms. Collins). The portion of the arbitration report that Palm Tran relies on is essentially a summary written by the Arbitrator of the testimony from the arbitration hearing. In relevant part, the Arbitrator is summarizing testimony from supervisor Barrow regarding an incident involving Ms. Collins. Mr. Barrow testified at the arbitration hearing about what Ms. Collins told him about the incident and about what he saw on the video of the incident. This portion of the report is hearsay within hearsay within hearsay. Palm Tran has not given any indication of if or how it plans to present the report in an admissible form at trial even by having the author of the report testify. Thus, it cannot be considered on summary judgment. *Jessup*, 697 F. Supp. 2d at 1322.

Mr. Rivera also objects to the arbitration report and arbitration hearing transcript under the Best Evidence Rule stating that "an arrest report is available and some video footage exists . . .." PRSOF ¶ 14. Regarding the video specifically, Mr. Rivera has not sought to introduce a video of the incident with Ms. Collins as evidence to be considered on summary judgment. The portion of the arbitration transcript relied on by Palm Tran and this Court is not subject to the Best Evidence Rule because it is not offered to prove the contents of an original writing, recording, or photograph. Fed. R. Evid. 1002.

In the portion of the hearing transcript referred to here, Mr. Barrow, Ms. Collins' supervisor at the time, testifies as to what Ms. Collins told him occurred leading up to and during the incident. He is not testifying about what a video

recording of the incident does or does not show. Thus, relying on that portion of Mr. Barrow's arbitration hearing testimony is not a violation of the Best Evidence Rule. A review of the record reveals that Mr. Rivera did in fact submit for the court the arrest report and "booking blotter" for Ms. Collins arrest. *See* ECF No. 21-4. Thus, I will rely on the arrest report and booking blotter to establish any facts regarding the charges for which Ms. Collins was arrested.

## V.     UNDISPUTED MATERIAL FACTS

### *Background*

1.      Mr. Rivera is a Hispanic male of Puerto Rican descent who was employed with Palm Tran as a bus operator from August 24, 1998 to April 25, 2017. DSOF ¶ 1; PRSOF ¶ 1; PSOF ¶ 1–3.[5]

2.      Defendant, Palm Tran Inc. o/b/o Palm Beach County, is a Florida for Profit Corporation that maintains offices in Palm Beach County, Florida. PSOF ¶ 4; DRSOF ¶ 4.

3.      Clinton Forbes, a black male, is the Executive Director of Palm Tran and is the individual responsible for determining who is to be terminated. PSOF ¶ 5–6; DRSOF ¶ 5–6.

4.      Palm Tran's buses have audio video recording systems, which Mr. Rivera was aware could be used for discipline purposes. DSOF ¶ 2; PRSOF ¶ 2.

---

[5] The record indicates that Mr. Rivera's termination was made effective on April 25, 2017, not April 17, 2017, as DSOF ¶1 states.  This difference in dates is not material to the issues before the Court.

***Palm Tran Policies***

5.      Effective Monday, October 3, 2016, the audio equipment on fixed route buses was enabled. DSOF, ¶ 6, PRSOF, ¶ 6. Mr. Rivera was aware of an amnesty period concerning the audio recording on buses and that the recordings could be used for discipline purposes. *Id*.

6.      Article 9 of the Labor/Management Agreement (LMA) between Palm Tran, Inc., and the Amalgamated Transit Union A.F. of L. – C.I.O. – C.L.C., Local 1577 states that employees are to give the riding public courteous and respectful treatment at all times to the end that the company's service may improve and grow. DSOF, ¶ 7, PRSOF ¶ 7; ECF No. 68-8 at 14.

7.      The first rule in the Palm Tran Code of Conduct & Cooperation states that profane language and boisterous actions while operating company vehicles will not be tolerated. DSOF, ¶ 7, PRSOF ¶ 7; ECF No. 68-9 ¶ 1. Rule 21 states that employees are expected to conduct themselves in an appropriate and professional manner while on duty and that conduct unbecoming a public employee will not be tolerated. DSOF, ¶ 7, PRSOF ¶ 7; ECF No. 68-9 ¶ 21.

8.      Section 7.17 of the Bus Operators Handbook states that "Bus Operators are the professionals and should always employ self-control, act accordingly, and avoid arguments at all times. Further, operators should not leave their seat for verbal or physical interactions with passengers or the general public except self-defense." DSOF, ¶ 7, PRSOF ¶ 7; ECF No. 68-10 at 31.

***The March 7, 2017 Incident and Mr. Rivera's Termination***

9.     The audio video recording system captured an incident involving Mr. Rivera that took place on March 7, 2017. ECF No. 68-13. The video shows that while Mr. Rivera was in route with passengers aboard the bus, he engaged in a verbal altercation with a passenger (Myron King) that included both Mr. Rivera and Mr. King threatening each other with physical violence and profanities. *See id*. at 0:33–4:24. The incident began with Mr. King attempting to rack his bike on the bike rack while the bus was a at a stop. *Id*. at 0:08–0:13. Mr. Rivera can be heard yelling at Mr. King to "calm down." *Id*. at 0:15. Mr. King then boarded the bus and immediately engaged with Mr. Rivera in a verbal dispute, to which Mr. Rivera responded. *Id*. at 0:30. For almost four minutes, Mr. Rivera and Mr. King engaged in a verbal dispute that included numerous profanities and threats yelled by both parties in front of other passengers riding the bus. *Id*. at 0:40–4:20. At one point, Mr. Rivera can be heard calling dispatch over the radio and saying "I need this individual off my bus before I lose my job. Ten-four. This is not negotiable." *Id*.at 3:30. Finally, Mr. Rivera stopped and exited the bus and took off his security badge. *Id*. at 4:26. Once off the bus, Mr. King can be heard shouting profanities at Mr. King including multiple invitations to fight physically, all while other passengers, including a young child, remained on the bus. *Id*. at 4:31–5:10. Ultimately, Mr. King departed the bus and Mr. Rivera returned to his seat and continued on his route. *Id*. at 6:50.

10.     Mr. Rivera was subsequently charged with violating Article 9 of the LMA. PSOF ¶ 7; DRSOF ¶ 7.

11.     A pre-termination hearing was held on April 10, 2017. DSOF ¶ 3; PRSOF ¶ 3. In a letter dated April 26, 2017, Mr. Forbes informed Mr. Rivera that as a result of the March 7, 2017 incident and his violation of Article 9 of the LMA, he was being terminated. ECF No. 68-6. [6]

12.     On October 25, 2017, Mr. Rivera filed a grievance, and thereafter participated in an arbitration hearing; on December 15, 2017, the Arbitrator denied the grievance. DSOF ¶ 3; PRSOF ¶ 3.

13.     Mr. Forbes stated in his deposition that his decision to terminate Mr. Rivera would not have changed if he had known at the time that he made the decision that Mr. King had a prior criminal history including arrests for retail theft, resisting without violence, trespass, disorderly conduct, robbery with a deadly weapon and aggravated assault with a deadly weapon, simple battery, attempted burglary, assault on a public transit worker, among others. PSOF ¶ 9; DRSOF ¶ 9.

***Equal Employment Opportunity Commission***

14.     Mr. Rivera filed a Charge of Discrimination on January 29, 2018, stating that he was discriminated against based on his race, national origin and gender. DSOF, ¶ 8, PRSOF ¶ 8. He lists April 25, 2017, the date he was

---

[6] Mr. Rivera disputes that this was the true reason for his termination. PRSOF, ¶ 3. However, at this time, I am only stating what the letter asserts was the reason for Mr. Rivera's termination.

terminated, as the date the discrimination based on his race, national origin and gender occurred. *Id*. U.S. Equal Employment Opportunity Commission provided a Dismissal and Notice of Rights to Mr. Rivera *Id*.

***Proffered Comparators***

15.    Arnaldo Guanche is a white male employed by Palm Tran as a bus operator. DSOF ¶ 12; PRSOF ¶ 12; PSOF ¶ 45; DRSOF ¶ 45.

16.    On September 22, 2015, Mr. Guanche was operating a Palm Tran bus when a passenger exited the bus and sat on a bench. ECF No. 68-15. [7] Mr. Guanche remained at the bus stop waiting for his time to leave when the passenger began yelling, walked onto the bus and threw a punch at him. ECF Nos. 68-15; 68-16. While Mr. Guanche was on the phone with dispatch, the passenger reentered the bus yelling, accompanied with threatening gestures, including kicking the fare box and punching the fare monitor, the passenger then took the garbage bag and threw it in Mr. Guanche's face. *Id*. Mr. Guanche stated that he "defended [him]self outside the bus – hit him and

---

[7] For the same reasons outlined above for Mr. Contino's self-authored incident report, Mr. Guanche's self-authored incident report (ECF No. 68-15) is admissible. Furthermore, Palm Tran also submitted as evidence in support of its Statement of Undisputed Material Facts the Palm Beach Sherriff's Office report of the incident involving Mr. Guanche (ECF No. 68-16). Mr. Rivera objects to the PSBO report on the grounds that it violates the Best Evidence Rule because Mr. Rivera has access to a video of another incident involving Mr. Guanche. I find that the Best Evidence Rule does not apply to the PBSO report because the PBSO report simply states what happened based on the officer's discussions with Mr. Guanche and an independent witness. ECF No. 68-16. It does not describe or summarize what is on a video of the incident. *Id*. Thus, I do not find that the PBSO report violates the Best Evidence Rule. *Workinger*, 90 F.3d at 1415. Mr. Rivera did not object on any other grounds.

knocked him down. He started to get up and I hit him again because I thought

he was going to attack me again – he was making the gestures with his hands."

ECF No. 68-15. Palm Beach County Sheriff's Officers arrived and spoke with

Mr. Guanche as well as an independent witness who verified Mr. Guanche's

version of events. ECF No. 68-16. The Officers completed a report charging the

passenger with Simple Battery. *Id*.[8] Mr. Guanche did not receive a disciplinary

suspension, or any other disciplinary action as a result of this incident.

ECF No. 65-3 at 7:13–17.[9]

17.     Mr. Guanche was involved in a second incident in which "he was not the

assailant; he was the one getting assaulted by the customer." ECF No. 68-5 at

49:20-22. [10]

---

[8] Mr. Rivera states in his Response that the incident referred to here is not the
incident he relies on to establish Mr. Guanche as a comparator. ECF No. 76 at 6. For
completeness of the record, the Court will consider both incidents in its comparator
analysis.

[9] Mr. Rivera labeled his exhibits alphabetically. For consistency, the Court will
refer to the alphabetically labeled exhibits by their numerical correspondent. For
example, ECF No. 65, Exhibit "A" will be referred to as ECF No. 65-1. That standard
will be applied to all of Mr. Rivera's exhibits that were submitted to the Court with
alphabetical identifiers.

[10] Mr. Rivera argues that in this second incident, Mr. Guanche was "menacing
a passenger with a construction wrecking bar, getting out of his seat, exiting the bus,
and eventually fighting with the passenger." PRSOF ¶ 12. The supporting evidence
Mr. Rivera offers is a portion of Mr. Forbes' deposition testimony in which he says he
does recall that Mr. Guanche was in a fight with a passenger but, "If I recall correctly
he was not the assailant, he was the one getting assaulted by the customer if I recall
correctly." ECF No. 68-5 at 49:20-22. Viewing this testimony in the light most
favorable to Mr. Rivera, the Court will not assume that Mr. Forbes is referring to the
September 22, 2015 incident, but to a second incident. Mr. Forbes' testimony is the
only evidence presented regarding this second incident.

18.   Mr. Guanche retired from Palm Tran in 2018. ECF No. 65-3 at 8:19–22.

19.   Michael Contino is a white male employed by Palm Tran as a bus operator. DSOF ¶ 11; PRSOF ¶ 11; PSOF ¶ 47.

20.   On May 9, 2017, Mr. Contino was involved in an incident with a passenger while on duty. *Id.* Mr. Contino's self-authored incident report states that on May 9, 2017, "a passenger didn't have the correct fare. When I challenged the fare he started shouting at me and hit my face. I defended myself. He spit on me and ran off." ECF No. 68-14.[11]

21.   Mr. Contino was not terminated for this incident. DSOF ¶ 11; PRSOF ¶ 11.

22.   Constance Killings is a black female who was employed by Palm Tran as a bus operator. DSOF ¶ 16; PRSOF ¶ 16; PSOF ¶ 37; DRSOF ¶ 37.

23.   On October 28, 2002, Ms. Killings was terminated due to excessive absenteeism. *Id.* She was subsequently rehired on June 23, 2004 pursuant to a "Last Chance Agreement" and did not have to go to arbitration. DSPOF ¶ 16; PRSOF ¶ 16; PSOF ¶ 27.

24.   Ms. Killings was also disciplined for an incident on November 25, 2009,

---

[11] In addition to his objection based on Best Evidence Rule and hearsay, Mr. Rivera also objects to this fact on the basis that it is an "Assumption of Facts Not in Evidence." PRSOF ¶ 11. For the reasons already stated, I have overruled the Best Evidence Rule and hearsay objections. Mr. Rivera's objection based on "Assumption of Facts Not in Evidence" is also overruled. The evidence relied upon to establish this fact is Mr. Contino's incident report, which contains his personal account of the incident. It is admissible for the reasons already stated. Thus, the court can rely upon the facts established in that report without relying upon "unproven and untrue assumptions." *Id.*

in which during her layover time, she did not let passengers on the bus when it was raining. ECF No. 65-4 at 24:3–6. One of the waiting passengers then boarded the bus and began to yell and curse at Ms. Killings so she exited the bus and walked away until her supervisor arrived. *Id*. at 24:9–25. Later once the passengers were allowed to board the bus and Ms. Killings continued on her route, a passenger complained that Ms. Killings would not turn off the AC when passengers requested it and that she stopped the bus to use the restroom while on route. *Id*. at 26:15–25; 28:23–25.

25.    Ms. Killings was also involved in a verbal disagreement with her coworker, Ms. Odette Powell, after the two "bumped shoulders," for which Ms. Killings was suspended and transferred. PSOF ¶ 31; DRSOF ¶ 31; PSOF ¶ 36; DRSOF ¶ 36; ECF Nos. 65-3 at 43:8–45:10; 65-4 at 43:2–7; 68-5 at 41:23–43:22.

26.    Ms. Killings was also involved in a verbal disagreement with her coworker Ms. Bradley-Daniels after the two bumped into each other in the hallway. PSOF ¶ 31; DRSOF ¶ 31; ECF Nos. 68-5 at 38:4–39:5; 40:16–41:4; 65-4 at 48:16–49:10.

27.    Ms. Killings was also written up for posting a profane note in the women's bathroom regarding an issue with ongoing theft in the workplace. ECF No. 21-7 at 19–21.

28.    Ms. Killings received a three-day disciplinary suspension for an infraction in which she allowed a passenger to rack their bicycle and then drove away before the passenger could board the bus leading to the bicycle later being

stolen by another passenger. ECF No.65-3 at 33:8–15.

29.     At no time during Ms. Killing's employment was she terminated for engaging in a verbal altercation with a co-worker or passenger. DSPOF ¶ 16; PRSOF ¶ 16.

30.     Odette Powell is a black female employed by Palm Tran as a bus operator. PSOF ¶ 42; DRSOF ¶ 42; ECF No. 68-5 at 41:23–42:3.

31.     On May 9, 2015, Ms. Powell received disciplinary action in the form of a four-day suspension for closing the bus door on a passenger in a careless manner. PSOF ¶ 40; DRSOF ¶ 40; ECF No.65-3 at 69:7–12.

32.     On September 13, 2016, Ms. Powell received disciplinary action in the form of a five-day suspension and retraining for disregarding a passenger's safety after she closed the passenger's arm in the door without looking and ensuring that the door cleared before pulling away. PSOF ¶ 39; DRSOF ¶ 39; ECF No.65-3 at 67:1–8.

33.     Ms. Powell is still employed by Palm Tran. PSOF ¶ 40; DRSOF ¶ 40.

34.     Wayne E. White is a black male employed by Palm Tran as a bus operator. DSOF ¶ 10; PRSOF ¶ 10.

35.     On June 13, 2017, Mr. White engaged in an argument with a member of the public and challenged him to a fistfight, for which he was given a three-day suspension. DSOF ¶ 10; PRSOF ¶ 10. Mr. White was driving his bus back to the garage without passengers on board. after completing his bus route, when the incident occurred. *Id*. Mr. White did not get out of his seat to engage

in a physical confrontation with the passenger. *Id.* [12]

36.    Meredith Collins is a black female employed by Palm Tran as a bus operator. DSOF ¶14; PRSOF ¶ 14.

37.    On April 8, 2017, Ms. Collins met with her boyfriend during her layover when no passengers were aboard the bus. ECF No. 68-11 at 77:13–17; 80:4–7. She exited the bus and took her boyfriend's phone. *Id.* at 77:17–19. Subsequently her boyfriend reported her to the Sheriff's office for battery which he said caused an abrasion to his lip. *Id.* at 87:17–88:9. The police arrested Ms. Collins for misdemeanor battery. ECF No. 21-4 at 1. Ms. Collins denied ever hitting her boyfriend. ECF No. 68-11 at 90:8–16. Ultimately, the State dismissed the charges against Ms. Collins. *Id.* at 114:16–25.[13]

---

[12] Mr. Rivera raises no objections or disputes as to Palm Tran's description of this incident or the record evidence relied upon by Palm Tran to establish it as fact. However, in his Statement of Facts, Mr. Rivera states that Mr. Forbes testified that he recalled the incident with Mr. White and that he recalled Mr. White yelling profanities at a member of the public while driving the bus. PSOF ¶ 20. Mr. Rivera cites to a portion of Mr. Rivera's deposition as proof of this fact. Palm Tran disputes the fact, stating that Mr. Rivera has misstated Mr. Forbes' testimony. DRSOF ¶ 20. A review of the portion of the deposition cited by Mr. Rivera reveals that after Mr. Rivera's counsel played the video of the incident, Mr. Forbes stated that he could see Mr. White and the motorist in a dispute, but could not make out what they were saying. ECF No. 68-5 at 19:1–19. Mr. Rivera's counsel then tells Mr. Forbes what he represents Mr. White said to the motorist. Counsel's statements are not evidence and thus will not be considered to establish a material fact.

[13] Palm Tran relied upon the Arbitration Order to establish the facts set forth in this paragraph. DSOF ¶ 14. As previously addressed, I will not look to the arbitration report to establish facts because it is inadmissible hearsay and has been properly objected to. Instead, in accordance with Federal Rule of Civil Procedure Rule 56, I have relied upon the "booking blotter" and arrest report at ECF No. 21-4 as well as a portion of the arbitration hearing transcript in the record. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it *may* consider other materials in the record.") (emphasis added).

38.    Palm Tran did not terminate Ms. Collins for this incident. DSOF ¶14; PRSOF ¶ 14.

39.    Mr. Forbes stated in his deposition that it is unacceptable for a Palm Tran employee to use a bus in the commission of a crime, but in Ms. Collins' case, he was unaware whether a crime actually occurred. ECF No. 68-24 at 45:15–16.

**Additional Material Facts**

40.    On January 14, 2020, Mr. Forbes stated in an interview,

"You have an African American male leading a bus company in Palm Beach County, we look for the best in class first including African American. It's something you have to do intentionally. You have to intentionally want a diverse community and a diverse organization and if you're in a position of power you can make it happen. That's a moment in history that means everything."

PSOF ¶ 8; DRSOF ¶ 8; ECF No. 68-24 at 27:9–28:2.

41.    Cathy Lewis, the Executive Senior Manager of Human Resources, stated that Palm Tran has had incidents in the past where drivers have gotten into arguments with passengers. PSOF ¶ 50; DRSOF ¶ 50, but Ms. Lewis could not recall any Palm Tran bus driver who had been terminated solely based on a verbal conflict. PSOF ¶ 51; DRSOF ¶ 51.

## VI.    DISCUSSION

1. <u>Claims under Title VII and the FCRA (Counts I, III—VII)</u>

   a. *Prima Facie Case of Discrimination under McDonell Douglas*

The first three elements of a prima facie case are not in dispute. Undoubtedly, Mr. Rivera is a member of a protected class (a Puerto Rican male of Hispanic descent),

qualified for his position as a bus operator at Palm Tran, and suffered an adverse employment action in that he was discharged from his position on April 25, 2017. Thus, the pertinent issue is whether Palm Tran treated Mr. Rivera less favorably than a similarly situated individual outside of his protected class.

Mr. Rivera contends that Palm Tran treated him less favorably because he was discharged from his position though his non-Hispanic and/or female comparators, Mr. Guanche, Mr. Contino, Ms. Killings, Mr. Powell, Mr. White, and Ms. Collins, engaged in the same behavior but were not discharged. *See* ECF No. 76 at 6–8. [14] Palm Tran argues that Mr. Rivera has failed to demonstrate that Palm Tran treated any other similarly situated employee of another race, national origin, or gender more favorably. Palm Tran argues that Mr. Rivera's comparators were not similarly situated because he failed to show that they engaged in conduct "nearly identical" to the conduct exhibited by Mr. Rivera for which he was fired, namely, leaving the driver's seat of the bus, removing his Palm Tran bus operator identification credentials, and initiating a profanity-laced verbal attack threatening a passenger

---

[14] In his Motion for Summary Judgment, Mr. Rivera highlights six employees to establish element two of Title VII discrimination claims based on race, national origin, or gender: that the plaintiff is entitled to or qualified for the position. ECF No. 66 at 7–9. Those six employees are Mr. Robinson, Mr. Collins, Mr. Wallace, Ms. Killings, Ms. Powell, and Ms. Bradley. Palm Tran does not contest in its Motion for Summary Judgment that Mr. Rivera was entitled to or qualified for the position of bus operator. Thus, I need not address these employees as they relate to that argument, only those who Mr. Rivera proffers are comparators for purposes of the *McDonnell Douglas* test.

with violence, all while other passengers were on the bus. ECF No. 67 at 4.[15] Mr.

Rivera argues that the comparators are "the same or similar" in that each of them,

"while performing duties as a bus driver, engaged in a verbal altercation with a

member of the public which did not escalate into physical violence." ECF No. 76 at 6.

Viewing the facts in the light most favorable to Mr. Rivera, I do not find that any of

the proposed comparators are similar to Mr. Rivera in all material respects, and thus

Mr. Rivera has not met his burden under *McDonnell Douglas* of establishing a prima

facie case of discrimination based on race, national origin, or gender.

### i. Arnoldo Guanche

Mr. Rivera claims that Mr. Guanche is a similarly situated employee who was

treated more favorably. See ECF No. 76 at 5–6. Even viewing the facts in the light

most favorable to Mr. Rivera, I do not find Mr. Guanche to be similarly situated in all

material respects. Although Mr. Rivera and Mr. Guanche may have been subject to

the rules and employment policy and may have even been under the jurisdiction of

the same supervisor, the evidence before me illustrates that Mr. Guanche was not

engaged in the same basic conduct as Mr. Rivera.[16] *Lewis*, 918 F.3d at 1227–28.

---

[15] Palm Tran argues that comparators must be "nearly identical" to Mr. Rivera and cites the Eleventh Circuit case *Maniccia v. Brown*, 171 F.3d 1364, 1368–69 (11th Cir. 1999). In *Lewis*, the Eleventh Circuit rejected the "nearly identical" standard and replaced it with the requirement that a proposed comparator must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226.

[16] Each of the alleged comparators were bus operators at Palm Tran at the same time as Mr. Rivera's termination and thus I will assume they were subject to the same employment policies and rules. Furthermore, although the Court is not aware of who each comparator's direct supervisor was, they also were all ultimately supervised by Mr. Forbes as he was the one making the termination decisions. ECF Nos. 68-5 at 21:7–8; 68-24 at 9:21–24.

There is little to no evidence in the record regarding the details of the incident Mr. Rivera relies on to establish Mr. Guanche as a comparator. The only thing Mr. Rivera has established is that Mr. Guanche "was not the assailant; he was the one getting assaulted by the customer." ECF No. 68-5 at 49:20-22. This alone does not justify a finding that Mr. Guanche and Mr. Rivera were involved in the same basic conduct. First, there is no evidence that Mr. Guanche violated Rule 7.17 of the Bus Operator Handbook ("Operators should not leave their seat for verbal or physical interactions with passengers or the general public except in self-defense.") (ECF No. 68-10 at 31). Second, there is no evidence that he violated the first rule in the Code of Conduct regarding the use of profane language (ECF No. 68-9 at ¶ 1; *see also* ECF No. 68-10 at 21). Finally, there is no evidence that he violated Article 9, Section 1 of the LMA ("employees . . . shall give the riding public courteous and respectful treatment at all times") (ECF No. 68-8 at 17). The video of the incident involving Mr. Rivera's March 7, 2017 incident depicts Mr. Rivera clearly violating each of these rules. ECF No. 68-13. Based on this incident, I do not find that Mr. Guanche exhibited the same basic conduct as Mr. Rivera so as to qualify him as "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226.

Mr. Rivera apparently is not relying on the September 22, 2015 incident to establish Mr. Guanche as a comparator (PRSOF ¶ 12), however, even if he is, I do not find that the September 22, 2015 incident is similar enough to Mr. Rivera's so as to make Mr. Guanche a valid comparator. The evidence before me shows that on September 22, 2015, Mr. Guanche was involved in an altercation initiated by a

passenger in which the passenger initiated a verbal altercation with Mr. Guanche that turned physical when the passenger punched Mr. Guanche and threw things at him. ECF Nos. 68-15 and 68-16. Mr. Guanche responded by hitting the passenger in self-defense. This incident is quite different from the incident between Mr. Rivera and Mr. King. Mr. Rivera has not provided sufficient evidence to show or support the inference that when Mr. Rivera left the bus and threatened to fight Mr. King, that he was responding in self-defense to a physical attack by Mr. King. Even assuming arguendo that Mr. King was the initiator of the verbal dispute (which the video does not show to be the case since Mr. Rivera is the one who initially yells at Mr. King to "calm down" when Mr. King asked him to lower the bus so he could rack his bike), Mr. Rivera was not acting in self-defense when he left the bus and tried to initiate a fight with Mr. King, thus violating Rule 7.17 of the Bus Operator Handbook. ECF No. 68-10 at 31. Unlike Mr. Rivera, Mr. Guanche did not exit the bus in an attempt to further engage the passenger, but in self-defense. Not only do his actions not appear to have violated Rule 7.17 of the Bus Operator Handbook, but contrary to Mr. Rivera's conduct, there is also no evidence before me to establish that Mr. Guanche violated the first rule in the Code of Conduct regarding the use of profane language (ECF No. 68-9 at ¶ 1; see also ECF No. 68-10 at 21). Thus, I do not find that Mr. Rivera was involved in the same basic conduct as Mr. Rivera.

Even assuming arguendo that the conduct exhibited by Mr. Guanche in either of these two incidents was the same as that exhibited by Mr. Rivera, the two employees do not share a similar employment or disciplinary history. *Lewis*, 918 F.3d

at 1227–28. The record indicates that Mr. Guanche worked for Palm Tran for about five years and was disciplined two times during his employment – once for a preventable accident in July 2017 and once for running the bus ahead of schedule in October 2013. ECF No. 65-3 at 7:18–23. Mr. Rivera worked for Palm Tran for almost nineteen years and over the course of that time he received disciplinary or corrective action ten times. ECF No. 65 at ¶¶ 15, 19. I do not find the employment and disciplinary history to be similar enough to satisfy the fourth *Lewis* factor for the purpose of determining whether the two are similarly situated in all material respects.

Viewing all the evidence and drawing all reasonable inferences in Mr. Rivera's favor, I find that Mr. Rivera and Mr. Guanche were not similarly situated in all material respects. Therefore, Mr. Rivera cannot rely on Mr. Guanche as a comparator to establish a prima facie case of race, national origin, or gender discrimination. *Tomczyk*, 198 F. App'x at 809.

### ii.  Michael Contino

Mr. Rivera argues that Mr. Contino is a similarly situated employee who was treated more favorably. See ECF No. 76 at 6. Even viewing the facts in the light most favorable to Mr. Rivera, I do not find that Mr. Contino is similarly situated in all material respects.

Again, Mr. Rivera and Mr. Contino may have been subject to the same employment policy and rules and may have even been under the jurisdiction of the same supervisor, but the evidence before me illustrates that Mr. Contino was not

engaged in the same basic conduct as Mr. Rivera. *Lewis*, 918 F.3d at 1227–28. Mr. Contino was involved in an incident that, much like the situations with Mr. Guanche, was initiated by a passenger. While on duty driving the bus, Mr. Contino confronted the passenger about the incorrect fare the passenger had paid when the passenger reacted by shouting at and hitting Mr. Contino in the face. ECF No. 68-14. The record before me indicates that Mr. Contino "defended [him]self" before the passenger spit on [him] and ran off." *Id*. Again, the incident described here is much different than Mr. Rivera's incident for the same reasons described above for Mr. Guanche. Namely, there is not sufficient evidence in the record to suggest that Mr. Rivera's altercation, although merely verbal, was precipitated by a need to defend himself against Mr. King.

Furthermore, the record does not contain sufficient evidence to support a reasonable inference that, like Mr. Rivera, Mr. Contino exited the bus during the altercation and left passengers on board. However, even if Mr. Contino had exited the bus, he would not have been in violation of Rule 7.17 of the Bus Operator Handbook because he was acting in self-defense. (ECF No. 68-10 at 31).

Viewing all the evidence and drawing all reasonable inferences in Mr. Rivera's favor, I find that Mr. Rivera and Mr. Contino were not similarly situated in all material respects because they did not engage in the same basic conduct.[17] Therefore,

---

[17] The record indicates that Mr. Contino was disciplined fifteen times over the course of his seventeen-year employment with Palm Tran. ECF No. 65-3 at 50:25–51:5. However, given the notable differences in their respective altercations, I do not find that Mr. Rivera and Mr. Contino were similarly situated in all material respects so as to render Mr. Contino a valid comparator.

with Mr. Contino as the proffered comparator, Mr. Rivera cannot establish a prima facie case of race, national origin, or gender discrimination. *Tomczyk*, 198 F. App'x at 809.

### iii.  Constance Killings

Similar to the previous two proffered comparators, I do not find that Ms. Killings was similarly situated to Mr. Rivera in all material respects so as to make her a valid comparator for purposes of Mr. Rivera's discrimination claims because the two did not engage in the same basic conduct.

The incident that Mr. Rivera equates to his own is one in which Ms. Killings, during her layover time, did not let passengers on the bus when it was raining. ECF No. 65-4 at 24:3–6. One of the waiting passengers then boarded the bus and began to yell and curse at Ms. Killings so she exited the bus and walked away until her supervisor arrived. *Id*. at 24:9–25. There was also an allegation from a passenger that later on the route, Ms. Killings left the air conditioning on when passengers requested it be turned off and that she stopped the bus to use the restroom. *Id*. at 26:15–25; 28:23–25.

Although Ms. Killings did exit the bus, the conduct exhibited by Ms. Killings in this particular incident is not the same as Mr. Rivera's for two primary reasons. First, Ms. Killings exited the bus in an attempt to disengage with the passenger while Mr. Rivera exited the bus in an attempt to engage physically with Mr. King. Her conduct is not a violation of Rule 7.17 of the Bus Operator Handbook (*see* ECF No. 68-10 at 31) because she did not leave her seat to verbally or physically interact with

a passenger or member of the general public. Second, Ms. Killings did not physically threaten anyone or attempt to engage in a physical altercation as Mr. Rivera did with Mr. King. Finally, there is no allegation that, as Mr. Rivera did, she used profane language in violation of the first rule in the Code of Conduct (ECF No. 68-9 at ¶ 1; *see also* ECF No. 68-10 at 21).

Ms. Killings received disciplinary action for at least four other incidents during her employ at Palm Tran: (1) a verbal disagreement with her coworker, Ms. Powell after the two "bumped shoulders" (ECF Nos. 65-3 at 43:8–45:10; 65-4 at 43:2–7; 68-5 at 41:23–43:22); (2) a verbal disagreement with her coworker Ms. Bradley-Daniels after the two bumped into each other in the hallway (ECF No. 65-4 at 48:16–49:10); (3) an incident in which Ms. Killings was caught posting in the women's bathroom an inappropriate letter containing profanities and threats directed at her coworkers (ECF No. 21-7 at 20–21); and (4) an infraction in which Ms. Killings allowed a passenger to rack their bicycle and then drove away before the passenger could board the bus leading to the bicycle later being stolen by another passenger (ECF No.65-3 at 33:8–15).

Although it is not entirely clear from the pleadings, to the extent Mr. Rivera argues that Ms. Killings is a comparator because of these other incidents for which she was disciplined less severely than Mr. Rivera (e.g., not fired), I continue to find that Ms. Killings is not similarly situated in all material respects. Each of these incidents, although inappropriate and warranting discipline, are factually distinguishable from Mr. Rivera's incident in material respects. The first three

incidents are materially different in that they did not take place on the bus while passengers watched, they did not involve a verbal dispute with a passenger—in fact they did not involve a member of the public at all—and finally, Ms. Killings did not attempt to engage in a physical fight with a member of the public or anyone else for that matter. These three incidents do not constitute conduct that violates Article 9, Section 1 of the LMA (ECF No. 68-8 at 17), or Rule 7.17 of the Bus Operator Handbook (ECF No. 68-10 at 31). These were spats between employees that were not in front of or involving passengers or other members of the public.

The last incident in which Ms. Killings left a passenger behind after he had racked his bike is materially different in that although it did occur on the bus itself and likely in front of other passengers, Ms. Killings did not verbally argue with a passenger, attempt to physically engage a passenger, or leave her bus seat in an attempt to engage a passenger. Although certainly a mistake, unlike Mr. Rivera's conduct, Ms. Killings' conduct in this instance does not violate the first rule in the Code of Conduct regarding the use of profane language (ECF No. 68-9 at ¶ 1; see also ECF No. 68-10 at 21) or Rule 7.17 of the Bus Operator Handbook ("Operators should not leave their seat for verbal or physical interactions with passengers or the general public except in self-defense.") (ECF No. 68-10 at 31).

Viewing all the evidence and drawing all reasonable inferences in Mr. Rivera's favor, I do not find that Ms. Killings displayed "the same basic conduct" as Mr. Rivera in any of these instances, and thus is not similarly situated in all material respects. *Lewis*, 918 F.3d at 1227–28. Ms. Killings is not a valid comparator through whom Mr.

Rivera can establish a prima facie case of race, national origin, or gender discrimination. *Tomczyk*, 198 F. App'x at 809.

### iv.  Odette Powell

I do not find that Ms. Powell was similarly situated to Mr. Rivera in all material respects because the two did not engage in the same basic conduct.

The only evidence before me of disciplinary action taken against Ms. Powell was for two separate instances in which Ms. Powell disregarded a passenger's safety by closing a passenger's arm in the door without looking and ensuring that the door cleared before pulling away. ECF No. 65-3 at 67:1–8; 69:7–12. [18] Viewing those facts in the light most favorable to Mr. Rivera, Ms. Powell's conduct still falls short of Mr. Rivera's because although it may have been reckless, it was not intentional. Recklessly closing a passenger's arm in the door is not the same as intentionally engaging a passenger in a drawn-out verbal argument laced with threats of physical

---

[18] Mr. Rivera alleges that in addition to those incidents, Ms. Powell was also in a verbal altercation with a passenger in which she called the passenger "oh stupid self" and "an embarrassment." ECF No. 76 at 7–8. *See also* PSOF ¶ 38. The supporting evidence Mr. Rivera cites is Director Forbes' deposition in which he was asked to read a report out loud for the record that describes this incident. ECF No. 68-5 at 46:1-47:12. Director Forbes goes on to say in the deposition that he has never previously heard of this incident and knows nothing about it. *Id*. That report was not submitted by either party as evidence in their motions for summary judgment. Without more detail and the report itself, I cannot rely on it. There is no information to indicate what kind of report it is, who authored the report, or when it was written. Therefore, I do not know whether the content of the report is based on personal knowledge, whether it sets out facts that would be admissible in evidence, or whether the author of the report is competent to testify on the matters stated in the report. *See* Rule 56(c)(4). Mr. Rivera also has not cited a hearsay exception under which it would be admissible. Thus, I cannot rely on it to determine whether Ms. Powell is a valid comparator.

violence, and subsequently stopping and exiting the bus in an attempt to engage with them in a physical fight. Ms. Powell did not violate the first rule in the Code of Conduct regarding the use of profane language (ECF No. 68-9 at ¶ 1; *see also* ECF No. 68-10 at 21), nor did she violate Rule 7.17 of the Bus Operator Handbook (ECF No. 68-10 at 31). Mr. Rivera's actions during the March 7, 2017 incident violated both of these rules. I do not find that Mr. Rivera and Ms. Powell are similarly situated in all material respects because Ms. Powell did not engage in the same basic conduct as the Mr. Rivera. *Lewis*, 918 F.3d at 1227–28.[19] Ms. Powell is not a valid comparator and therefore cannot be used by Mr. Rivera to establish a prima facie case of race, national origin, or gender discrimination. *Tomczyk*, 198 F. App'x at 809.

### v. Wayne White

Finally, Mr. Rivera contends that Mr. White is a comparator. ECF No. 76 at 6. I do not find that Mr. White was similarly situated to Mr. Rivera in all material respects because the two did not engage in the same basic conduct.

The evidence before me shows that on Tuesday, June 13, 2017, Mr. White engaged in an argument with a member of the public and challenged him to a fistfight. DSOF ¶ 10; PRSOF ¶ 10. When shown the video of his actions at the pre-

---

[19] With regard to the other *Lewis* factors for "similarly situated in all material respects," Ms. Powell and Mr. Rivera appear to be slightly more comparable. Over the course of her employment with Palm Tran, Ms. Powell was disciplined five times (including the two incidents described above in which she closed the bus door on a passenger's arm). ECF No. 655-3 at 66:14–75:13. It is unclear from the record how long Ms. Powell has been employed by Palm Tran. However, even viewing these facts in the light most favorable to Mr. Rivera, Ms. Powell is still not a comparator for Mr. Rivera because she did not engage in the same conduct and thus is not similarly situated in *all* material respects.

termination hearing, Mr. White "displayed great remorse and took full responsibility for [his] actions." ECF No. 21-9. Prior to this incident, Mr. White had never received any disciplinary action relating to unprofessional conduct. *Id.*

Of all of Mr. Rivera's alleged comparators, Mr. White's conduct may come the closest to Mr. Rivera's and yet it still falls short in material respects. First, although Mr. White was driving his bus at the time of the altercation, he was driving it back to the garage after completing his bus route and there were no passengers on board. DSOF ¶ 10; PRSOF ¶ 10. Second, unlike Mr. Rivera, Mr. White did not get out of his seat to engage in a physical confrontation with the passenger, leaving the bus unattended in violation of Rule 7.17 of the Bus Operator Handbook (ECF No. 68-10 at 31). *Id.* Finally, Mr. White showed remorse for his actions, while Mr. Rivera did not. ECF No. 68-11 at 31:22–32:3. Additionally, even if their respective conduct was the same, I still do not find Mr. White and Mr. Rivera to be similarly situated in all material respects because, speaking to the fourth *Lewis* factor, the two do not appear to have shared the same employment or disciplinary history. *Lewis*, 918 F.3d at 1227–28. The June 13, 2017, incident was Mr. White's first instance of discipline for displaying unprofessional conduct while Mr. Rivera had already received disciplinary or corrective action ten times. ECF No. 65 at ¶¶ 15, 19. Accordingly, I do not find that Mr. White and Mr. Rivera are similarly situated in all respects so as to make Mr. White a valid comparator under the standard set forth in *Lewis*.

### vi.  Meredith Collins

In the oral argument on the Motions for Summary Judgment, Mr. Rivera's counsel referenced five Palm Tran employees who he argued were adequate comparators. Those five employees were Ms. Collins, Mr. Guanche, Mr. Contino, Mr. White, and Ms. Killings. *See* ECF No. 86 at 3:54–4:30. [20] However, in Mr. Rivera's Motion for Summary Judgment Ms. Collins seems to be brought up for the sole purpose of supporting Mr. Rivera's argument that under element two of 42 U.S.C. §1981, he is entitled to or qualified for the position from which he was terminated. ECF No. 66 at 7. [21] It does not appear that Palm Tran is disputing that Mr. Rivera was qualified for the position of bus operator, and his qualifications or lack thereof were not the reason for his ultimate termination. Nevertheless, in the interest of thoroughness, I will address whether Ms. Collins is a valid comparator.

The record before me indicates that on April 8, 2017, Meredith Collins met with her boyfriend during her layover when no passengers were aboard the bus. ECF No. 68-11 at 77:13–17; 80:4–7. She exited the bus and took her boyfriend's phone. *Id.* at 77:17–19. Subsequently her boyfriend reported her to the Sheriff's office for battery which he said caused an abrasion to his lip. *Id.* at 87:17–88:9. Ms. Collins denied ever

---

[20] He did not reference Ms. Powell although she is discussed in the pleadings as a proffered comparator.

[21] Mr. Rivera also refers to Mr. Robinson, Mr. Wallace, Ms. Killings, Ms. Powell, and Ms. Bradley in this section of his Motion for Summary Judgment not for comparator purposes, but for qualification purposes. ECF No. 66 at 7–9. As stated above, since Mr. Rivera's qualification is not at issue, they will not be discussed here.

hitting her boyfriend and ultimately, the State dismissed the charges against her. *Id.* at 90:8–16; 114:16–25.

The conduct displayed by Ms. Collins in this incident differs from Mr. Rivera's conduct during the March 7, 2017 incident in that (1) Ms. Collins was on a layover when this incident occurred rather than on active duty driving the bus and (2) no passengers were on board or waiting to board the bus at the time. Thus, although Ms. Collins may have violated other LMA, code of conduct, or Bus Operator Handbook rules, there is no evidence to suggest that she violated the first rule in the Code of Conduct regarding the use of profane language (ECF No. 68-9 at ¶ 1; *see also* ECF No. 68-10 at 21), which Mr. Rivera did. There is no evidence to suggest she violated Article 9, Section 1 of the LMA (ECF No. 68-8 at 17), which Mr. Rivera did. Finally, there is no evidence to suggest she violated Rule 7.17 of the Bus Operator (ECF No. 68-10 at 31), which Mr. Rivera did. Thus, I do not find that the incident involving Ms. Collins is the same as Mr. Rivera's March 7, 2017 incident and therefore, Ms. Collins is not similarly situated to Mr. Rivera in all material respects so as to be considered a valid comparator. *Lewis*, 918 F.3d at 1226.

To summarize, I find that none of Mr. Rivera's proffered comparators are "similarly situated in all material respects" because they did not engage in the same basic conduct as Mr. Rivera. Each of their respective incidents can be materially distinguished from Mr. Rivera's in that they either (1) did not argue with, threaten, or use profane language with a passenger, (2) did not argue with, threaten, or use profane language with a passenger in the presence of other passengers, or (3) did not

exit the bus in an effort to physically fight a passenger while other passengers were on board the bus. *Id*. at 1227–28. Without a valid comparator to consider, the Court cannot find that Mr. Rivera has satisfied his burden under element four of the *McDonnell Douglas* framework to show that his employer treated "similarly situated" employees outside his class more favorably. *McDonnell Douglas*, 411 U.S. at 802. Thus, I do not find that Mr. Rivera has established a prima facie case of discrimination.

Given Mr. Rivera's failure to establish a prima facie case of discrimination, there is no rebuttable presumption of discrimination; hence, Mr. Rivera cannot succeed on his claims under the *McDonnel Douglas* framework. *Adams*, 242 F. App'x at 619.

### b. *Convincing Mosaic of Circumstantial Evidence*

As an alternative to *McDonnel Douglas*, Mr. Rivera can overcome summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis*, 934 F.3d 169, 1185 (11th Cir. 2019) (quotations omitted) (quoting *Smith*, 644 F.3d at 1328). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (alteration omitted) (quoting *Silverman*, 637 F.3d 729 at 734). Speaking specifically to element two first, there is no evidence that Palm Tran

systematically treated similarly situated employees outside of Mr. Rivera's protected class better than he was treated. Mr. Rivera has proposed several comparators all of whom I have already deemed insufficient for the reasons set forth above.

When viewing the record without the comparator evidence, there is little left to contribute to the "mosaic." Mr. Rivera seems to rely on Mr. Forbes' statement in an interview as one piece of mosaic evidence that can lead to the inference of discriminatory intent on the part of Palm Tran. The evidence before me is that on January 14, 2020, Mr. Forbes stated in an interview,

> "You have an African American male leading a bus company in Palm Beach County, we look for the best in class first including African American. It's something you have to do intentionally. You have to intentionally want a diverse community and a diverse organization and if you're in a position of power you can make it happen. That's a moment in history that means everything."

PSOF ¶ 8; DRSOF ¶ 8; ECF No. 68-24 at 27:9–28:2. Even when drawing all reasonable inferences in Mr. Rivera's favor, I do not find Mr. Forbes' statement to be circumstantial evidence of discriminatory intent. *See Dorvil v. AdvanceStores Co.*, No. 10-CV-60036, 2011 WL 6069362, at *14 (S.D. Fla. 2011) (J. Torres) (finding that the relationship between a supervisor's racially and culturally insensitive comments toward an employee and that employee's subsequent termination was "simply too attenuated to establish an inference of discrimination.").

Mr. Rivera also offers Ms. Lewis' statement – that Palm Tran has had incidents in the past where drivers got into arguments with passengers but he could not recall any Palm Tran bus driver who had been terminated solely based on a verbal conflict – as further evidence of discriminatory intent on the part of Palm Tran. Even when

viewing this statement in Mr. Rivera's favor and assuming it is in fact true that Palm Tran had never previously terminated a bus driver solely based on a verbal conflict, I do not find this to be circumstantial evidence of discriminatory intent. As previously stated, although Mr. Rivera's altercation with Mr. King was only verbal, Mr. Rivera made clear attempts to escalate it to a physical altercation, did so in front of other passengers, and left the bus while other passengers were on board. Thus, I do not find the fact that no other bus drivers had been fired solely for verbal altercations to justify the inference that Palm Tran intentionally discriminated against Mr. Rivera by terminating him.

Mr. Rivera has failed to provide a convincing mosaic of circumstantial evidence that would support the inference that Mr. Forbe's decision to terminate Mr. Rivera was motivated by racial, national origin, or gender animus. See *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.") (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), abrogated on other grounds by *Lewis*, 918 F.3d at 1213).

Having concluded that Mr. Rivera has failed to establish either a prima facie case of discrimination on the basis of race, national origin, or gender, or a convincing mosaic of circumstantial evidence that would allow a jury to infer that he was terminated because of his race, national origin, or gender, I find that Palm Tran's Motion for Summary Judgment should be granted on this basis and that final

judgment be entered in Palm Tran's favor as to Counts I and III–VII. *Tomczyk*, 198 F. App'x at 809; Lewis, 934 F.3d at 1185.

    2.  <u>Claims Under 42 U.S.C. § 1981 (Count II)</u>

As previously stated, to prevail on a race discrimination claim under 42 U.S.C. § 1981, Mr. Rivera must allege but-for causation in his complaint and must make a prima-facie showing of but-for causation in order to prevail on the merits at summary judgment. *Comcast*, 140 S. Ct. at 1019 (rejecting the Ninth Circuit's approach that it is sufficient to allege that race was the "motivating factor" for the denial of the contract and holding instead that plaintiffs in section 1981 actions must allege and prove that race was the "but-for" cause for the denial of a contract); *McGhee v. PPG Indus., Inc.*, No. 4:18-CV-244 (CDL), 2020 WL 1669849, at *5 (M.D. Ga. Apr. 3, 2020). This is a more stringent causation requirement than Title VII and FCRA, which for the reasons stated above, Mr. Rivera was unable to satisfy. Even viewing the evidence and drawing reasonable inferences in the light most favorable to Mr. Rivera, I do not find that Mr. Rivera, who has failed to establish a prima facie case of discrimination under Title VII and FCRA, has provided sufficient evidence to satisfy the heightened causation standard of 42 U.S.C. § 1981. Thus, I find that Palm Tran's Motion for Summary Judgment should be granted on this basis and that final judgment should be entered in Palm Tran's favor as to Count II.

## RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that Palm Tran's Motion for Summary Judgment (ECF No. 67) be **GRANTED**, Mr. Rivera's Motion for Summary Judgment (ECF No. 66) be **DENIED**, and that final judgment be entered in Palm Tran's favor as to Counts I-VII.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 15th day of March, 2021, at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE